```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SAMUEL W. BRAND                   :     CIVIL ACTION
                                  :
         v.                       :
                                  :
AXA EQUITABLE LIFE INSURANCE      :
CO., et al.                       :     NO. 08-2859
```

MEMORANDUM

Bartle, C.J.                                      September 16, 2008

      Plaintiff Samuel W. Brand ("Brand") filed this diversity action for breach of contract and bad faith against defendants AXA Equitable Life Insurance Co. ("Equitable"), Disability Management Services, Inc. ("DMS"), and Centre Life Insurance Company ("Centre"). The parties agree that Pennsylvania law applies. Before us is the motion of defendants DMS and Centre to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

I.

      In ruling on a motion under Rule 12(b)(6), the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Nonetheless, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level ....'" Id. at 232 (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)). In other words, a complaint must contain "enough factual matter (taken as true) to suggest" the elements of the claims asserted. Id. at 234 (quoting Twombly, 127 S. Ct. at 1965). We may consider documents relied on by the complaint as well as matters subject to judicial notice, such as public records. See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1992, 1997 (3d Cir. 2003).

II.

For present purposes, we accept as true the following factual allegations contained in Brand's complaint. In 1991, Brand, a Pennsylvania resident, purchased a disability insurance policy in Pennsylvania from Equitable, a New York corporation, known at the time as the Equitable Life Assurance Society of the United States. The policy, which was reissued in December, 1998, has been and continues to be fully paid and in full force and effect.

In July, 2000, Equitable contracted with Centre, a Massachusetts corporation, for a "100% indemnity reinsurance agreement" under which Centre would reimburse Equitable for the entirety of Equitable's losses on its disability insurance policies. The purpose of the contract, according to Brand's complaint, was "to relieve ... Equitable of all future financial risk" on its disability insurance policies. Nonetheless, the

contract did not assign or delegate to Centre any of Equitable's obligations to Brand under the disability insurance policy itself.  Nor did the contract expressly entitle Brand to recover directly from Centre any sum due to Brand from Equitable.

The complaint alleges that in February, 2001, Equitable and Centre[1] retained DMS, another Massachusetts corporation, to serve as a third party administrator for every disability insurance policy issued by Equitable in or before 1993, including the policy issued to Brand.  Centre Reinsurance, LTD, a reinsurance company and an "affiliate" of Centre Life, owns 40% of DMS.  DMS and its representatives were purportedly authorized to "administer, investigate, examine, and render decision on claims" arising from the disability insurance policies.  Like Centre, however, DMS did not directly assume any of Equitable's obligations to Brand under the disability insurance policy.

In September, 2005, after a serious motor vehicle accident, Brand began suffering from tinnitus, a condition which causes him to hear a constant, high-pitched sound in his left ear.  He submitted a claim of total disability under his policy along with relevant medical information to defendants in March, 2006.  Defendants failed to render a decision on Brand's claim until April 4, 2008, when they advised Brand that he was entitled to only residual disability benefits, not total disability benefits, under the policy.

---

1.  Plaintiff did not provide a copy of the contract between Equitable, Centre, and DMS.

Brand now alleges that defendants' failure to provide him with total disability benefits constitutes a breach of contract. He also contends that defendants' conduct in handling his insurance claim constituted a pattern of delay and harassment that entitles him to damages under Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371.

### III.

Defendants Centre and DMS argue that they should be dismissed from this action because, as a reinsurer and third party administrator respectively, they are not in privity of contract with Brand, the insured. To prove a cause of action for breach of contract under Pennsylvania law, a plaintiff must establish: "1) the existence of a contract, including its essential terms; 2) a breach of a duty imposed by the contract; and 3) resultant damage." Pittsburgh Const. Co. v. Griffith, 834 A.2d 572, 580 (Pa. Super. Ct. 2003). With respect to the first element, the Pennsylvania Superior Court has stated, "one cannot be liable for a breach of contract unless one is a party to that contract." Electron Energy Corp. v. Short, 597 A.2d 175, 177 (Pa. Super. Ct. 1991). Consequently, it is the general rule that an insured may bring claims for breach of contract and bad faith against the insurer who issued the policy but not against related parties, such as reinsurers and third party administrators, who are not in privity with the insured. See Reid v. Ruffin, 469 A.2d 1030, 1033 (Pa. 1983); Lockhart v. Fed. Ins. Co., Civ. A. No. 96-5330, 1998 WL 151019, at *3 (E.D. Pa. Mar. 30, 1998).

Plaintiff acknowledges that he is a party only to the insurance contract with Equitable. Nonetheless, he argues that he is entitled to recover from Centre and DMS for breach of contract as a third party beneficiary of the contracts between those parties and Equitable. In Guy v. Liederbach, 459 A.2d 744 (Pa. 1983), the Pennsylvania Supreme Court adopted § 302(1) of the Restatement (Second) of Contracts, which states that a party may be considered a third party beneficiary to a contract:

> if recognition of a right to performance in the beneficiary is appropriate to effectuate the intentions of the parties and either
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Liederbach, 459 A.2d at 751. The Court, in a later decision, explained:

> [A] party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, unless, the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Scarpitti v. Weborg, 609 A.2d 147, 150 (Pa. 1992) (citations omitted). The Pennsylvania Supreme Court has held that "the insured may bring a direct action against the reinsurer where the reinsurance contract may properly be determined to be a third

party beneficiary contract ...." Reid at 1032 (citing Appeal of Goodrich, 2 A. 209, 211 (Pa. 1885).

It is undisputed that the contracts between Equitable, Centre, and DMS do not express an intention to benefit Brand. Accordingly, we must first determine whether the circumstances here are "compelling" enough to "effectuate the intention of the parties" through "recognition of [Brand's] right to proceed as a third party beneficiary." Id.  Even taking Brand's allegations as true and construing all ambiguities in his favor, there is nothing either in the complaint or in the undisputed documents before us to show that the defendants intended for Brand to be a third party beneficiary under the relevant contracts.

According to Brand's allegations, Equitable contracted with Centre solely "to relieve ... Equitable of all future financial risk" on its disability insurance policies.  This very assessment of Equitable's intentions dooms Brand's claim to third-party beneficiary status.  Equitable did not contract with Centre to benefit Brand in any way.  Rather, it did so only to further its own financial interests.  The agreement was structured as a reinsurance contract and not as an assignment to Centre of Equitable's duties to Brand under the disability insurance contract.  As the Commonwealth Court has explained:

> Reinsurance is insurance coverage taken out by an insurance company on risks that it has originally insured....  The two main reasons cited for purchasing reinsurance are capacity and stability.  By arranging for reinsurance a primary carrier can relieve itself from the full burden of a large loss.  By accepting a

> share of the loss, reinsurance has the effect of adding to the financial capacity of the primary insurer and stabilizing the primary carrier's financial results.
>
> Where the direct insurer seeks safety in reinsurance in the above-described manner, generally the policyholder has no knowledge of either the existence or application of reinsurance proceeds to its claims.

Koken v. Legion Ins. Co., 831 A.2d 1196, 1234 (Pa. Commw. 2003), aff'd, 878 A.2d 51 (2005) (citation and internal quotation marks omitted). The reinsurance relationship between Equitable and Centre was not designed to benefit Brand. He simply had the right to receive compensation from Equitable and Equitable alone in the event of a valid claim, and the agreement between Equitable and Centre did nothing to change the situation.

      The same holds true with respect to Equitable's relationship with DMS. Equitable hired DMS to perform administrative duties arising from the disability insurance policies, up to and including rendering decisions on claims. Nonetheless, Brand does not list the disbursement of funds in the event of a meritorious claim as being among the duties which Equitable hired DMS to undertake. Equitable itself retained that duty. On the facts alleged, the defendants never intended that Brand be permitted to obtain satisfaction under the disability insurance policy directly from DMS as a third party beneficiary.

      As a final note on this issue, Brand has offered us no "compelling" reason to grant him third party beneficiary status where that status is not made explicit in the relevant contracts.

For example, there is no indication that Brand's insurer, Equitable, is insolvent or in any way immune to suit.  In those cases where a plaintiff has been permitted to bring a claim for breach of contract against a reinsurer or third party administrator, it has been under circumstances where recovery was not possible from the original insurer.  See, e.g., Koken v. Legion Ins. Co., 831 A.2d 1196 (Pa. Commw. 2003), aff'd, 878 A.2d 51 (2005); see also Scarpitti, 609 A.2d at 151-52; Guy, 459 A.2d at 749.

                              IV.

We next address whether plaintiff brings a valid cause of action under 42 Pa. Cons. Stat. Ann. § 8371, which permits relief only for bad faith conduct "toward the insured" by "the insurer."  Lockhart, 1998 WL 151019, at *4.  The Pennsylvania Superior Court has held that we must consider two factors when determining whether a party is an "insurer" for purposes of the bad faith statute:  "(1) the extent to which the company was identified as the insurer on the policy documents; and (2) the extent to which the company acted as the insurer."  Brown v. Progressive Ins. Co., 860 A.2d 493, 498 (Pa. Super. Ct. 2004). We should accord "significantly" more weight to the second factor, which "focuses on the true actions of the parties rather than the vagaries of corporate structure and ownership."  Id. at 498-99.  Courts applying Pennsylvania law have explained that a party acts as an insurer when it "issues policies, collects premiums and in exchange assumes certain risks and contractual

obligations." T & N PLC v. Pa. Ins. Guar. Ass'n, 800 F. Supp. 1259, 1261 (E.D. Pa. 1992); Margaret Auto Body, Inc. v. Universal Underwriters Group, 2003 WL 1848560, at *1 (Pa. Com. Pl. Jan. 10, 2003).

Brand first asserts that Centre qualifies as an insurer under the definition provided by Pennsylvania law.  He emphasizes that if he is entitled to recover a sum from Equitable under his insurance contract, Equitable would then be entitled to recover that same amount from Centre.  According to Brand, this makes Centre the true bearer of any risk associated with the policy.

The reinsurance contract between Equitable and Centre did not assign or delegate to Centre any of Equitable's contractual obligations under its insurance contract with Brand. Centre did not issue the policy to Brand and does not collect premiums from Brand.  By entering into a reinsurance contract with Equitable, even one which operates as an absolute transfer of risk under the policy, Centre has "assume[d] certain risks and contractual obligations," only in relation to Equitable. Margaret Auto Body, 2003 WL 1848560, at *1.  Accordingly, in our view, Centre is not and was never Brand's insurer under the disability insurance policy sold by Equitable to Brand.

We reach the same conclusion with respect to DMS. Under Pennsylvania law third party administrators like DMS which are engaged by the insurer of record are not deemed to be insurers.  See Ressler v. Enter. Rent-A-Car Co., Civ. A. No. 06-562, 2007 WL 2071655, at *6 (W.D. Pa. July 13, 2007); Kvaerner

U.S. Inc. v. Onebeacon Ins. Co., No. 0904 April Term 2003, 071507, 2003 WL 22282605, at *2 (Pa. Com. Pl. Sept. 29, 2003). We find irrelevant Brand's allegation that a company "affiliated" with Centre owns 40% of DMS.  It is undisputed that DMS did not issue the policy to Brand and has no contractual relationship with him.  It merely performs the duties required by its contract with Equitable, which are to administer the claim in various respects and pass along collected premiums to Equitable.  DMS cannot be considered an insurer which Brand is entitled to sue for breach of contract or bad faith.

V.

Accordingly, we will grant the motion of defendants Disability Management Services, Inc. and Centre Life Insurance Company to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SAMUEL W. BRAND                  :      CIVIL ACTION
                                 :
          v.                     :
                                 :
AXA EQUITABLE LIFE INSURANCE     :
CO., et al.                      :      NO. 08-2859
```

ORDER

AND NOW, this 16th day of September, 2008, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of defendants Disability Management Services, Inc. and Centre Life Insurance Company to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED.

BY THE COURT:


/s/ Harvey Bartle III
                                                         C.J.